UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARL YECKEL, § | |
| § | |
| Appellant, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:11-CV-047-B |
| § | (Appeal of Adversary No. 05-39136-sgj7) |
| JAMES CUNNINGHAM, Trustee, THE § | |
| KING FOUNDATION, AND THE § | |
| ATTORNEY GENERAL OF THE STATE § | |
| OF TEXAS, § | |
| § | |
| Appellees. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Appellant Carl Yeckel's appeal of the bankruptcy court's denial of his Motion to Strike objections to his claimed homestead exemption as untimely. Having considered the decision below, the briefing of the parties, and the applicable law, the Court is of the opinion that the order of the bankruptcy court should be and hereby is **AFFIRMED**.

## I.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

This appeal arises from the bankruptcy court's determination that certain objections to Appellant Carl Yeckel's claimed homestead exemption were timely filed under the Rules of Bankruptcy Procedure. On June 11, 2004, a Texas jury found Yeckel liable for fraudulent conduct and breaches of fiduciary duty to the King Foundation, a charitable organization for which he had served as President from 1993 to 2002. (*See* R. 166-94, 196-99). Based on the jury's findings, the trial court entered a judgment against Yeckel, ordering that he disgorge the $5.2 million in excessive

1

compensation and benefits he had received as President and also imposing an additional $10.5 million award in punitive damages. (R. 162-64). Yeckel appealed this judgment in November 2004. (R. 201-24).

On August 12, 2005, while that case was still on appeal, Yeckel filed a petition for protection under Chapter 11 of the Bankruptcy Code. (*See* R. 58-59). As part of his filing, Yeckel claimed a homestead exemption for his residence at 3900 Marquette. (R. 104). On September 15, 2005, the first meeting of creditors was held and completed. (R. 126). Thirty days thereafter, on October 16, 2005, the King Foundation filed its Objection to Exemptions Claimed by Debtor, arguing that Yeckel's purchase of 3900 Marquette "was not an arms length transaction and . . . was consummated in attempt to defraud his creditors," that he did not give any valuable consideration for the property, and that the King Foundation's assets had been used to purchase the property. (R. 127-28). The objection also twice referenced the state court judgment against Yeckel, in detailing how he had defrauded the King Foundation. (*Id.*).

On November 3, 2005, the Court converted Yeckel's bankruptcy petition from Chapter 11 to Chapter 7. (*See* R. 65). A Chapter 7 first meeting of creditors began on December 16, 2005, and lasted until June 1, 2006. (R. 22-30) . Thirty days later, on June 20, 2006, the King Foundation filed an Amended Objection to the Homestead Exemption Claimed by Debtor, which the Texas Attorney General and Trustee joined. (R. 131-37). This Amended Objection specifically referenced § 522(q) of the Bankruptcy Code, which caps one's homestead exemption at $125,000 when a debtor owes a debt arising from fraud, deceit, or manipulation in a fiduciary capacity. (*See* R. 133-34). Whether these amended objections were timely is the center of the parties' dispute in the instant appeal.

On November 13, 2005, shortly after Yeckel's bankruptcy was converted to a Chapter 7 case,

2

the King Foundation commenced an adversary proceeding in the bankruptcy court for purposes of obtaining a determination as to the dischargeability of Yeckel's debt in light of the state court proceeding. (*See* R. 23). Because the Texas case was still on appeal, the King Foundation sought and received a stay of the adversary proceeding until the appeal was resolved. (*See* R. 27). The Texas Third Court of Appeals did not issue its opinion until June 4, 2009. (*See* R. 201-24). Once Yeckel's petition for review to the Texas Supreme Court was subsequently denied, the state trial court's modified final judgment became final. (*See* R. 227, 233-34; King Foundation's Br. 8). On the King Foundation's motion, the bankruptcy court thereafter reopened the adversary proceeding. (*See* R. 49).

On June 28, 2010, the King Foundation and Trustee filed a Motion for Summary Judgment in the adversary proceeding, seeking a judgment in its favor on its objection to Yeckel's homestead exemption. (*See* R. 49; R. 146-264).[1] In response, on September 10, 2010, Yeckel filed a Motion to Strike the June 30, 2006 Amended Objections filed by the King Foundation, Trustee, and Attorney General. (R. 143-45). The Bankruptcy Court held a hearing on Yeckel's Motion to Strike on October 14, 2010 and entered an Order denying his Motion to Strike on November 12, 2010. (*See* R. 5-16).

Yeckel then commenced the instant appeal of the denial of his Motion to Strike, filing his Appellant's Brief (doc. 3) on February 4, 2011. Yeckel contends that the Bankruptcy Court erred in denying his Motion to Strike. (*See generally* Appellant's Br.). More specifically, he maintains that the Bankruptcy Court mistakenly applied Interim Rule 4003(b) retroactively, not the version of B.R.

---

[1] This Motion for Summary Judgment, which was later granted, is the subject of a separate, nearly identical appeal before this Court. *See Yeckel v. Cunningham*, No. 3:11-cv-236-B.

4003(b) effective when he filed his Chapter 11 petition. (*Id.* at 10-11). Under the older version of the Rule, he argues, an objection to a homestead exemption not raised within 30 days of the creditors' Section 341 meeting was waived, no matter how baseless the claimed exemption might be. (*Id.* at 11).

The Trustee and King Foundation filed their responsive Brief (doc. 7) on February 25, 2011. The Attorney General filed his virtually identical Brief (doc. 14) on April 11, 2011. Appellees argue that Interim Rule 4003(b) applied to this case when they filed their Amended Objections. (*See generally* King Foundation's Br.). They contend that Interim Rule 4003(b)'s more liberal standard, which allowed them to bring their objections at any time before the closing of the bankruptcy case, thus allowed them to file their Amended Objections on June 30, 2006. (*Id.* at 12).

## II.

## JURISDICTION

This is an appeal of the bankruptcy court's order denying Yeckel's Motion to Strike in Adversary Proceeding No. 05-39136-sgj7. The bankruptcy court had jurisdiction over the underlying adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This Court is now vested with jurisdiction over the appeal of that order pursuant to 28 U.S.C. § 158(a).

## III.

## LEGAL STANDARDS

A district court has jurisdiction to hear appeals from final judgments and orders of a bankruptcy court, as well as interlocutory orders when allowed by the court. 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8001(a). The district court functions as an appellate court and applies the same standard of review used by federal appellate courts when reviewing the decisions of district courts.

*Webb v. Reserve Life Ins. Co.* (*In re Webb*), 954 F.2d 1102, 1103-04 (5th Cir. 1992). The Court reviews the bankruptcy court's findings of fact for clear error, and its conclusions of law and mixed law and fact questions *de novo*. *McLain v. Newhouse* (*In re McLain*), 516 F.3d 301, 307 (5th Cir. 2008); *Wooley v. Faulkner* (*In re SI Restructuring, Inc.*), 542 F.3d 131, 135 (5th Cir. 2008). A factual finding is clearly erroneous where, "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Memphis-Shelby County Airport Auth. v. Braniff Airways, Inc.* (*In re Braniff Airways, Inc.*), 783 F.2d 1283, 1287 (5th Cir. 1986) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). It is insufficient that the reviewing court, upon examining the evidence, would merely have decided differently if sitting as the trier of fact. *Id.* (quoting *Anderson*, 470 U.S. at 573).

## IV.

## ANALYSIS

The parties' dispute in the instant case concerns purely a question of law, and thus the Court examines the question of which version of B.R. 4003(b) applied to the Amended Objections *de novo*. In April 2005, Congress modified the Bankruptcy Code by enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Reform Act"). One of the chief additions of the Reform Act was the implementation of 11 U.S.C. § 522(q), which provides, in part, that "a debtor may not exempt any amount of interest in property [as a homestead] . . . which exceeds in the aggregate $146,450 if . . .(B) the debtor owes a debt arising from . . . (ii) fraud, deceit, or manipulation in a fiduciary capacity . . . ." 11 U.S.C. § 522(q)(1). While the effective date for the majority of the Reform Act was October 17, 2005, with respect to § 522(q), Congress set an effective date of April 20, 2005. *See* Reform Act, Pub. L. No. 109-8, §§ 308 & 1501, 119 Stat. 23, 81-82, 216

(2005) (stating that the Reform Act is "effective, except as otherwise provided, 180 days after April 20, 2005 [October 17, 2005]" and providing that the changes codified in § 322(q) became effective "on or after the date of the enactment of this Act [April 20, 2005]."

The parties' dispute on appeal centers on a procedural provision involving § 522(q). Prior to the Reform Act, a creditor could object to a debtor's claim of exemption "only within 30 days after the meeting of creditors under § 341 is concluded." Fed. R. Bankr. P. 4003(b) (2000) (amended 2008). In order to speedily implement necessary changes to the Rules of Bankruptcy Procedure, the Advisory Committee on the Federal Rules of Bankruptcy Procedure promulgated Interim Rules that it encouraged bankruptcy courts to adopt while awaiting the implementation of national changes to the Rules of Bankruptcy Procedure. (*See* R. 321-22). Of utmost import in the instant case, the Interim Rules amended B.R. 4003(b) to read "[a]n objection to a claim of exemption based on § 522(q) shall be filed before the closing of the case . . . ." (R. 368). The Bankruptcy Court for the Northern District of Texas adopted the Interim Rules on October 13, 2005, setting an effective date on the rules for October 17, 2005. (*See* R. 324-25).

While Yeckel offers a host of reasons that the amended B.R. 4003(b) does not apply to the Amended Objections, the Court is unpersuaded. It is uncontroverted that § 522(q) of the Reform Act went into effect on April 20, 2005, and thus governed Yeckel's Chapter 11 petition, which was filed on August 12, 2005. It is also uncontroverted that Interim Rule 4003(b) became effective on October 17, 2005. (*See* R. 324-25). Yeckel's argument on appeal thus hinges on the proposition that Interim Rule 4003(b) only applies to cases filed after October 17, 2005. The Court finds that this cannot be the case. In adopting the Interim Rules, the Northern District provided that the Rules were "to be effective October 17, 2005 *and to apply to cases and proceedings governed by the Reform*

- 6 -

*Act*." (R. 325). Since Yeckel's bankruptcy petition was governed by § 322(q) the Reform Act, the Interim Rules thus became effective as to his case on October 17, 2005. When the King Foundation, Trustee, and Attorney General filed their Amended Objections on June 30, 2006, those objections therefore fell within the more liberal amended procedural rules, and the bankruptcy court properly denied Yeckel's Motion to Strike.

Because the Court finds that the Interim Rules applied when Appellees filed their Amended Objections, the Court does not address the parties' other arguments, or the bankruptcy court's alternative holdings, in this Opinion.

V.

CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's order denying Appellant's Motion to Strike.

**SO ORDERED.**

**DATED:** August 24, 2011.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE